GARY M. RESTAINO
United States Attorney
District of Arizona

RAYNETTE M. LOGAN
Arizona State Bar No. 016695
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
Raynette.Logan@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, Plaintiff, vs. Gabriel Quinn Enos, Defendant. | CR-19-00834-02-PHX-SMB **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA** |

The United States of America, by and through its undersigned attorneys, hereby responds in opposition to Defendant Gabriel Quinn Enos' Motion to Withdraw Guilty Plea (Doc. 143). The government opposes Defendant's motion because he has failed to show a fair and just reason for withdrawal, as required. The government's objection is based on the attached memorandum of points and authorities, the pleadings, and the entire record in this case.

Respectfully submitted this 14th day of April, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*/s/Raynette M. Logan*

RAYNETTE M. LOGAN
Assistant U.S. Attorney

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTS AND PROCEDURAL BACKGROUND

### A. The Indictment

On July 16, 2019, the grand jury returned a two-count Indictment charging Defendant with CIR-First Degree Murder, in violation of 18 U.S.C. §§ 1153 and 1111 (Count One), and Use of a Firearm During a Crime of Violence Resulting in Death, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (j) and (2) (Count Two) (Doc. 1).

### B. The Change of Plea Proceeding

On January 20, 2021, Defendant pled guilty to the lesser included charge of Count One, Voluntary Manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112, pursuant to a plea agreement, in front of this honorable Court (Doc. 89 and 92). The Court conducted a thorough Rule 11 colloquy, as set forth below.

At the beginning of the change of plea proceeding, the Court inquired as to whether the defendant would allow defense counsel to sign on his behalf. Defense counsel notified the Court that she did not get the signed page from the defendant back in time for the change of plea hearing, but she said, "I also discussed with Mr. Enos the fact that, in order to proceed today, I would need his permission to sign the agreement on his behalf, as we did not receive the signature page in time. And he has agreed to allow me to do that." (Reporter's Transcript (RT) 1/20/2021 2; Attached as Defendant's Exhibit 1.)[1] The Court then placed Defendant under oath. The Court confirmed that Defendant understood the seriousness of being placed under oath. "Mr. Enos, now that you've been sworn in, do you understand that if you answer any of my questions falsely, you could be charged with perjury?" Defendant responds, "Yes." (*Id.* at 2.)

The Court then had a lengthy discussion with Defendant regarding his consent to appear by video teleconference for his change of plea. The Court thoroughly explained

---

[1] "RT" refers to the Reporter's Transcript, followed by a date and page number(s).

Defendant's right to be in person and the options for completing his change of plea. When defendant had questions regarding his right to be physically present, the Court was ready to set the hearing off until he could be present. Defense counsel offered another option of quarantine to allow the hearing to move forward at an earlier date, but defendant insisted on going forward on the date of the hearing by video teleconference.

The Court: Okay. So a couple of preliminary matters. Your attorney indicated that you consent to proceed with this hearing by video.

Is that true?

Defendant: Yes.

The Court: And do you understand that you have the right to be physically present, but due to Covid-19, we can't do that right now.

Defendant: Yes.

The Court: And so you could wait to enter your change of plea whenever things clear up, or we can take forward – take it today and move your case forward ---

And is that what you want to do?

Defendant: Um, I'd rather wait.

The Court: You want to wait?

Defendant: Yes.

The Court: Okay, And do you understand that could be many months?

Defendant: Yes, I understand.

The Court: OK. Counsel.

Ms. Weidner: Your Honor, if that's what Mr. Enos wants, then that is what we shall do.

The Court: Okay. All right. Mr. Enos, then we will vacate today's hearing and reset it ---

Well, I think what we should do is maybe set a status hearing in – let's see. We're not doing any trials in February – so in sometime mid March maybe to see if it opens up again.

Ms. Weidner: Your honor, the other option which I've seen district courts do is for individuals who wish to have in-person change of plea proceedings or

> in-person sentencings, they have to be placed in quarantine for 14 days before the set date in order to proceed. And so -- and then they would be transferred here for that hearing only, probably alone, but that is something else we could do. If we set it out far enough that there is enough time for a 14-day quarantine, I believe the marshals can coordinate that. I---
>
> The Court:   You're right. We can. I didn't think about that option because a lot of people don't want to do that. So we could set it out.

(*Id* at 3-4.)

The Court gave the defense counsel and Defendant time to speak without government's counsel or the Court present to determine how Defendant wished to proceed with regard to setting the change of plea. (*Id*. at 6.) Defendant chose to proceed with the change of plea that day and consented to using the video teleconference. (*Id*.)

The Court then confirmed Defendant's consent to defense counsel signing the plea agreement for Defendant. The Court explained to Defendant the full effect of defense counsel signing the plea agreement for Defendant. The Court asked, "The second question is your attorney did indicate that you granted her permission to sign the plea agreement on your behalf; is that correct? Defendant responded, "Yes, Your Honor." The Court asked, "And by doing so, do you understand that that will act – or that will have the same force as if you signed the plea agreement yourself?" Defendant responded, "Yes, Your Honor."

The Court then queried Defendant to ensure that he understood the agreement, was in his right mind, and could understand the proceedings. (*Id*. at 7-8.) The Court also asked defense counsel to ensure she had no concerns regarding Defendant's competency. (*Id*. at 8.) Defendant told the Court that he had read the entire plea agreement himself. (*Id*.) Defendant affirmed that he went over the plea agreement with his attorney and that she explained all the different parts of the plea agreement to Defendant. (*Id*.) Defendant assured the Court that he understood the plea agreement. (*Id*.) The Court also explained, and Defendant affirmed that he understood, that once the Court accepted his plea, that Defendant could not withdraw from his plea. (*Id*. 8-9.)

Although Defendant affirmed that he had read and understood the plea agreement in its entirety, the Court went through each and every provision of the plea agreement to

ensure that Defendant understood his rights and the effect of the plea agreement. (*Id*. at 9-13.) The Court ensured that Defendant was pleading guilty voluntarily. (*Id*. at 9.) The Court explained the maximum penalties and that Defendant understood them. (*Id*. at 9-10) The Court explained other consequences of pleading guilty and that Defendant understood that there were other consequences to pleading guilty. (*Id*. at 11.) The Court explained that Defendant was giving up his right to appeal and collaterally attack the judgment and conviction. (*Id*. at 11) The Court explained all of Defendant's constitutional rights to a trial by jury, and Defendant assured the Court that he knew what his rights were and that he was giving up those rights if he pled guilty. (*Id*. at 11-12.) Defense counsel assured the Court that Defendant understood his rights. (*Id*. at 13.) The Court explained every element of the offense, and Defendant said that he understood. (*Id*.) The Court went through the factual basis, and Defendant admitted each and every fact. (*Id*. at 14.)

Defendant pled guilty 18 months after he was indicted, giving Defendant and defense counsel ample opportunity to review the evidence. Defendant pled guilty in January 2021, 15 months ago. Defendant has had his sentencing continued numerous times because he wanted to be sentenced in person. Now that sentencings are being held in person, Defendant moves to withdraw from his plea agreement and guilty plea.

**C. Impact of Plea Agreement**

If Defendant had rejected the government's proposed plea agreement, and proceeded to trial, he would have faced a sentence of mandatory life in prison if convicted of Count One (First Degree Murder) and a consecutive minimum of 10 years up to life for Count Two (Use of a Firearm During a Crime of Violence Resulting in Death). Thus, the plea agreement, which permitted Defendant to plead guilty to Voluntary Manslaughter with a stipulation to 15 years (with a possible 6 months additional confinement for his Supervised Release Violation) reduced his exposure to prison significantly. Therefore, any advice that Defendant's attorney may have provided to suggest that Defendant accept the plea agreement would have been reasonable. Likewise, Defendant's decision to accept the plea agreement is also reasonable.

## II. LAW AND ARGUMENT

Federal Rule of Criminal Procedure 11(d) governs the withdrawal of a guilty plea, and subsection (2)(B) provides that a defendant may do so "after the court accepts the plea but before it imposes sentence" if "the defendant can show a fair and just reason for requesting the withdrawal." The United States Supreme Court has held that anything less than a truly fair and just reason for permitting withdrawal would "debase the judicial proceeding at which a defendant pleads and the court accepts his plea." *United States v. Hyde,* 520 U.S. 670, 676 (1997) (overturning Ninth Circuit ruling reversing district court's denial of defendant's motion to withdraw). The Supreme Court explained that, "after the defendant has sworn in open court that he actually committed the crime, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea," freely allowing the withdrawal of a guilty plea "would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." *Id.*

The burden of establishing a truly fair and just reason therefore rests on the defendant. *E.g., United States v. Rison-Ortiz,* 830 F.3d 1067, 1069 (9th Cir. 1987) (upholding district court's denial of motion to withdraw, rejecting argument that United States should be affirmatively required to show prejudice to prevent withdrawal). Noting the abundant safeguards in the Rule 11 proceeding that both "ensure that the criminal defendant who pleads guilty understands exactly what the plea means" and "ensur[e] some finality at the time pleas are accepted," the Ninth Circuit recognizes that when a "district court fully complied with Rule 11's requirements, the result should be more than ephemeral." *Id*. at 1070. Because of those safeguards, a defendant's statements made in the Rule 11 hearing "carry a strong presumption of verity" and "constitute a formidable barrier" to subsequent challenges. *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).

Towards that end, the Ninth Circuit Court of Appeals holds that "fair and just reasons" must rise to the level of "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did

not exist when the defendant entered his plea." *United States v. Mayweather,* 634 F.3d 498, 504 (9th Cir. 2010) (emphasis added) (affirming district court's denial of defendant's motion to withdraw, noting that the defendant's "decision at his change of plea proceeding not to bring to the district court's attention" his alleged complaint "precludes him from establishing a fair and just reason for withdrawing his plea"). Moreover, the existence of delay between the Rule 11 proceeding and a subsequent motion to withdraw, when a defendant is represented by competent counsel, requires that "'the reasons given to support the withdrawal must have considerably more force.'" *United States v. Nostratis,* 321 F.3d 1206, 1211 (9th Cir. 2003) (upholding district court's denial of withdrawal when defendant waited 2 years to request), *quoting* Fed. R. Crim. P. 32, Adv. Comm. Notes (1983).

The Ninth Circuit and sister Circuits look to a number of factors in evaluating whether a truly "fair and just reason" exists to justify withdrawal from a plea agreement, such as: (1) whether the plea was knowing, voluntary and intelligent and in compliance with Rule 11; (2) whether there is a credible claim of actual innocence; (3) the strength of the reasons offered in support of the motion to withdraw; (4) whether there is delay in bringing the motion; and (5) any resulting prejudice to the United States or inconvenience to the Court. *E.g., United States v. Santiago Miranda,* 654 F.3d 130, 134-40 (1st Cir. 2011). As applied to this case, each factor weighs heavily in favor of summary denial of Defendant's motion. The transcript of the plea colloquy reflects that Defendant made a knowing, voluntary, and intelligent waiver of his rights and plea of guilty, as the Court found at the end of the Rule 11 hearing. There has been no claim of actual innocence. There is no credible reason offered in support of the motion to withdraw. There was a 15 month delay in bringing this motion from the time of the change of plea, and the delay caused by Defendant's actions may have resulted in prejudice to the Government's case. The pandemic has, unfortunately, hit the members of the Gila River Indian Community hard with a higher death rate than the general population. At this point, it is unknown if the government witnesses have survived or succumbed to Covid-19.

There are several claims that the Ninth Circuit has determined do not qualify as "fair and just" reasons to withdraw a guilty plea, including: (1) a change of heart, even a "good faith" change of heart (*United States v. Ensminger*, 567 F.3d 587, 593 (9th Cir. 2009)), (2) a defendant's conclusion that the government's case is weaker than it seemed at the time of the plea (*Showalter*, 569 F.3d at 1155-56), and (3) underestimating the severity of the sentence (*United States v. Briggs*, 623 F.3d 724, 728 (9th Cir. 2010)).

"The decision whether to permit the withdrawal of a guilty plea 'is solely within the discretion of the district court.'" *Showalter*, 569 F.3d at1154 (quoting *United States* v. *Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003)). A district court's denial of a motion to withdraw will be reviewed for abuse of discretion. *Id*. (citing *United States v. Ortega-Ascanio*, 376 F.3d 879, 883 (9th Cir. 2004)). A district court's findings of fact that underlie its decision "are reviewed for clear error." Id. (citing *Nostratis*, 321 F.3d at 1208).

Here, Defendant has not alleged a fair and just reason exists to allow him to withdraw from his guilty plea. Defendant has not alleged that newly discovered evidence exists, intervening circumstances occurred, nor has he alleged any other reason for withdrawing the plea that did not exist when he entered his plea. Instead, Defendant moved to withdraw his guilty plea by claiming that "he failed to understand legal matters and rights he gave up in the way that he should have at the time of the plea." To give credence to Defendant's assertion would fly in the face of Rule 11 and the colloquy under which this Court proceeded. The Court could not have been more thorough in explaining Defendant's rights, even after Defendant had stated under oath that he had read the plea agreement, his defense counsel had explained it to him, and that he understood everything within the written plea agreement.

Furthermore, Defendant was on Supervised Release at the time of this offense in CR 18-207-01-PHX-SMB, for CIR-Assault Resulting in Serious Bodily Injury. Defendant pled guilty in that case pursuant to a plea agreement on September 17, 2018, which provided for the same constitutional rights and same appeals rights that Defendant would be giving up in this case. Defendant has been through the change of plea colloquy before

and knows the consequences for giving up his rights when he pleads guilty. The only difference between the prior federal case and this case is the nature of the offense. Defendant faces much more significant consequences if he did not plead guilty in this case.

**CONCLUSION**

Because Defendant has failed to show a "fair and just" reason to withdraw his guilty plea, his motion should be denied. Defendant has delayed sentencing time and again. Now that Defendant faces the reality of being sentenced in Court, he seeks to delay and play games with the Court. The victim's family is entitled to closure. The government requests that sentencing proceed on April 27, 2022, with no further continuances.

Respectfully submitted this 14th day of April, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Raynette M. Logan*
RAYNETTE M. LOGAN
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Mark Anderson, Attorney for Defendant

*s/ Rebecca Clarke Robinaugh*
U.S. Attorney's Office